UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-50393
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORTNEY ANTHONY LUCIEN,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

(August 8, 1995)

Before WISDOM, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Cortney Anthony Lucien (Lucien) appeals his convictions, following a jury trial, of one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). We reverse and remand.

**Facts and Proceedings Below**

On September 5, 1989, local police executed a search warrant at 6302-D Manor Road in Austin, Texas. Upon entering the

residence, the officers observed a black male, later identified as Lucien, running from the bathroom. Officer Valera (Valera) heard running water in the bathroom and noticed that Lucien's hands were wet. Valera found a plastic bag containing several aluminum foil packets floating in the toilet and $819 in cash in the bathroom sink. An additional $408 was found in a pair of pants in one of the bedrooms. The police arrested Lucien and Taika Campbell (Campbell) at the scene. No one else was present. The officers found the keys to the Manor Road residence in Lucien's pockets as well as an identification card bearing his picture but the name Antwon Watson. The officers found a rental application for the Manor Road apartment in the name of Antwon Watson in the living room. In the course of executing the search warrant, the officers also seized three weapons and approximately sixteen grams of crack cocaine.[1] Although Lucien's real name is apparently Corey Demetric Lucien, he gave his name as Cortney Anthony Lucien at the time of his arrest.[2] Lucien also told the Austin police that his address was 560 Rice in San Antonio, Texas, but the government verified that no such address existed.

Law enforcement officials filed second-degree drug felony charges against Lucien and Campbell in Texas state court. On September 9, 1989, Lucien posted bail and returned to his home in

---

[1] A police forensic chemist testified that the net weight of the cocaine seized was 16.48 grams.

[2] Both indictments as well as the caption on appeal list Lucien's name as "Cortney Anthony Lucien." In his brief on appeal, Lucien concedes that he gave an incorrect name when he was arrested by the Austin police.

Los Angeles, California.  In October 1989, all state charges against Lucien were dropped, and state and federal authorities agreed that the federal government would prosecute Lucien.  On October 10, 1989, an agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF) placed a hold on two of the three weapons seized during the September 9, 1989, search.  On January 29, 1992, the hold was accidentally removed, and the two weapons were subsequently destroyed.  The third firearm had been returned to its true owner and thus was not destroyed.

On May 9, 1991, nineteen months after the state charges were dropped, Lucien and Campbell were indicted by a federal grand jury on three drug-related counts, and federal warrants for their arrests were issued.  Taika Campbell was arrested on August 9, 1991, in Los Angeles, California, and federal authorities proceeded with the case against him until the charges were dismissed on January 9, 1992.  Lucien remained at large until November 23, 1993, when he was arrested by the California police during a routine traffic stop after an NCIC check indicated the outstanding federal arrest warrant.  Lucien was taken into custody and subsequently transferred to the Western District of Texas.

On January 18, 1994, a federal grand jury returned a superseding three-count indictment charging Lucien and Campbell with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) & 846 (Count One), possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count Two), and possession of firearms during and in

3

relation to the commission of a drug trafficking offense in violation of 18 U.S.C. § 924© (Count Three).[3] Lucien filed a motion to dismiss for lack of a speedy trial and a supplemental brief alleging that his due process rights were violated by the period of preindictment delay. On February 10, 1994, the district court held an evidentiary hearing on this motion.

At this hearing, Lucien maintained that, during the period between the October 1989 dismissal of the state charges and his November 1993 arrest, he was living openly in Los Angeles. He testified that, after his release on bail and until January 1990, he lived openly with his sister at 1016 Gage Street, Los Angeles, California, an address listed on his bond application.[4] According to Lucien, he moved to his mother's house at 1717 West 45th Street in Los Angeles in January 1990 and lived openly at her house until his arrest in November 1993. As evidence, Lucien provided probation records reflecting that he regularly completed his required community service hours, copies of an income tax return, phone bills, and a California identification card issued by the Department of Motor Vehicles (DMV). All these documents listed Lucien's address as 1717 West 45th Street.

Charles Meyer, an ATF agent, testified about the government's

---

[3]    Although Campbell was charged in this superseding indictment, he was not tried with Lucien.

[4]    The district court noted that Lucien's sister, in an affidavit, attested that Lucien lived with her at 1016 Gage Street from September 1989 to September 1990. This affidavit contradicts Lucien's testimony that he lived with his sister until January 1990.

efforts to locate Lucien after the federal arrest warrant was issued. Meyer testified that he contacted the Los Angeles police department, the sheriff's department, and the gang unit; called the California phone numbers listed in phone records seized from the Manor Road residence; checked several addresses associated with Lucien; and sent flyers to Los Angeles and San Antonio. In searching the California DMV records, Meyer used the name Cortney Anthony Lucien. Because Lucien's California identification card was under the name Corey Demetric Lucien, the result stated "No record for criteria given." Meyer conceded that the government never sent an agent to the 1016 Gage Street address listed on Lucien's bond application. Eventually, the government obtained the 1717 West 45th Street address from a Los Angeles gang unit, and in December 1991, Meyer requested a Los Angeles-based ATF agent, Annette Harden (Harden), to go to the 1717 West 45th Street address and attempt to apprehend Lucien. Harden testified that she went to 1717 West 45th Street and spoke with a middle-aged woman who identified herself as a relative of Lucien's. After this woman told Harden that Lucien did not live at 1717 West 45th Street, Harden informed her that there was an outstanding federal arrest warrant for Lucien.

On March 31, 1994, the district court denied Lucien's motion to dismiss the indictment for pre- and post-indictment delay. Lucien's case proceeded to trial. At the close of the evidence, Lucien requested that the district court give the jury a lesser-included offense instruction on simple possession. The district

court denied Lucien's request. Thereafter, the jury found Lucien guilty of Counts Two and Three but acquitted him of the conspiracy count. On May 27, 1994, the district court sentenced Lucien to 168 months of imprisonment, five years of supervised release, and ordered him to pay a $100 in special assessments. Lucien filed a timely notice of appeal.

## Discussion

### I.  Preindictment Delay

Lucien argues that the delay between the dismissal of the state charges against him and his indictment on federal charges violated his Sixth Amendment right to a speedy trial.[5] Preindictment delay, however, does not raise a Sixth Amendment issue; rather, it is examined under the due process clause of the Fifth Amendment. *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1432 (1995). Although Lucien raised a due process argument based on preindictment delay in the district court, we hold that he has abandoned his preindictment delay argument on appeal by failing to adequately brief the issue. *United States v. Heacock*, 31 F.3d 249, 258 (5th Cir. 1994). Lucien's arguments on appeal focus solely on the post-indictment delay and the relevant Sixth Amendment analysis; he never raises

---

[5]     In his brief on appeal, Lucien mistakenly states that he was indicted on March 9, 1991, and therefore calculates the time period between the dismissal of the state charges against him in October 1989 and his indictment on federal charges to be seventeen months. The record, however, reflects that Lucien was indicted on May 9, 1991. Thus, the period of preindictment delay is actually nineteen months.

the due process argument or cites preindictment delay cases.[6]

Even if Lucien had not abandoned his preindictment delay argument, we would still reject it because he has not established actual prejudice resulting from the delay. Citing Sixth Amendment post-indictment delay cases, Lucien argues that the delay was presumptively prejudicial; however, a defendant must show actual prejudice to establish a claim of preindictment delay under the due process clause. Lucien's argument is thus without merit. *United States v. Beszborn*, 21 F.3d 62, 66 (5th Cir.) ("The concept of presumed prejudice has no place in a due process analysis."), *cert. denied*, 115 S.Ct. 330 (1994).

Lucien argues that the delay resulted in the destruction of tangible evidence, but he never identifies what evidence was destroyed. If Lucien is referring to the two firearms accidentally destroyed, his argument fails. The government presented the third weapon to the jury. Moreover, the loss of the two weapons inured to Lucien's benefit and could hardly be said to constitute actual prejudice. We thus reject Lucien's argument based on destroyed evidence. *United States v. Royals*, 777 F.2d 1089, 1090 (5th Cir. 1985) (defendant must show that lost evidence is material, exculpatory, and otherwise unobtainable). Lucien also argues that the government was responsible for the disappearance of Campbell, the only eyewitness in the case. Lucien does not explain the

---

[6] Although his summary of the argument vaguely states that "pre-indictment and post-indictment delay both resulted in prejudice to the Appellant," in the body of his brief, Lucien only mentions preindictment delay once in a passing reference to both pre- and post-indictment delay.

7

relevance of Campbell's testimony and thus cannot rely on it to establish actual prejudice. *United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir.) (defendant who failed to explain relevance of lost witness's testimony could not show prejudice), *cert. denied*, 115 S.Ct. 530 (1994), *and cert. denied*, 115 S.Ct. 1165 (1995). Because Lucien completely fails to show that the alleged lost evidence or missing witness in any way impaired his defense, he cannot establish actual prejudice from the delay.[7]

II. Post-indictment Delay

Lucien also argues that his Sixth Amendment right to a speedy trial was violated by the delay between his first federal indictment and his subsequent arrest.[8] In analyzing a defendant's Sixth Amendment speedy trial claim based on post-indictment delay, we consider four factors: (1) the length of the delay, (2) the

---

[7] The district court rejected Lucien's preindictment delay argument on the ground that Lucien failed to establish that the government delayed the indictment to gain a tactical advantage. We recently addressed this issue in *United States v. Crouch*, 51 F.3d 480 (1995), *petition for rehearing en banc granted*, 1995 WL 363762 (June 14, 1994). The panel opinion in *Crouch* held that a defendant may prevail on a due process claim of preindictment delay even without showing that the government intentionally delayed the indictment to gain a tactical advantage. *Id.* at 483. Instead, the panel in *Crouch* held that, "after finding actual prejudice from pre-indictment delay, the court must weigh the actual prejudice suffered against the reasons for the delay." *Id.* at 485. Because we find that Lucien has failed to establish actual prejudice, we need not consider the conduct of the government in our preindictment delay analysis.

[8] Again, Lucien miscalculates the period of delay. In his brief on appeal, Lucien states that the period of post-indictment delay was fifteen months. The record, however, reflects that Lucien was indicted on federal charges on May 9, 1991, and was arrested in California on November 23, 1993. Accordingly, we calculate the period of post-indictment delay to be approximately twenty-eight months.

8

reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay. *United States v. Garcia*, 995 F.2d 556, 560 (5th Cir. 1993) (citing *Barker v. Wingo*, 92 S.Ct. 2182, 2192-93 (1972)). We review for clear error a district court's findings in applying this balancing test. *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1197 (1994).

The length of the delay serves as the trigger for the *Barker* analysis. *Doggett v. United States*, 112 S.Ct. 2686, 2690-91 (1992). If the length of delay crosses a threshold level regarded as presumptively prejudicial, the district court must make findings regarding the remaining three factors and balance all four factors. *Robinson*, 2 F.3d at 568. This Circuit generally requires a delay of one year to trigger speedy trial analysis. *Id.* Because the delay in the instant case exceeded one year, the district court properly made findings concerning the remaining factors. Under *Barker*, "different weights should be assigned to different reasons [for the delay]," with deliberate efforts "to hamper the defense . . . weighted heavily against the government." *Barker*, 92 S.Ct. at 2192 (footnote omitted). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

Lucien argues that the government was responsible for the delay, that its conduct "was of such a negligent nature that it

9

would appear deliberate,"[9] and that his conduct did not contribute to the delay in any way because he was unaware of the federal indictment until his arrest in November 1993. Lucien relies heavily on the fact that Meyer used only the name "Cortney Anthony Lucien" in searching the California DMV records even though he knew from the NCIC search that there were alternate spellings of Lucien's name. If Meyer had tried these alternative names, Lucien contends, he would have discovered Lucien's 1717 West 45th Street address, where Lucien insists that he was living openly.

By December 1991, the government had found the 1717 West 45th Street address and had sent ATF Agent Harden to investigate. Although Lucien claimed that he was living openly at 1717 West 45th Street from January 1990 until November 1993, a relative of Lucien's told Harden that he did not live there. Moreover, Harden told the woman that there was a federal warrant for Lucien's arrest. This testimony, specifically credited by the district court, undermines Lucien's argument that he did not learn of the federal indictment until his arrest in November 1993. Even when the government had the 1717 West 45th Street address, they could

---

[9] In support of this argument, Lucien relies on the dismissal of the federal case against Campbell and the accidental removal of the hold on the two weapons. It is unclear how the dismissal of the charges against Campbell evinces a deliberate effort to delay bringing Lucien to trial, especially given that Campbell was reindicted in the January 18, 1994, superseding indictment along with Lucien. As far as the destruction of the weapons is concerned, the loss of this physical evidence actually benefits Lucien. His contention that the destruction of this evidence prevents him from analyzing whether the alleged weapons were firearms as defined by 18 U.S.C. § 924(c) is unsupported by anything even tending to suggest they were not firearms.

not locate Lucien.  Thus, the district court determined that, even accepting Lucien's argument, he would still be responsible for "at least two-thirds, if not all, of the post-indictment delay."  We agree.  Lucien's characterization of the government's conduct as deliberately dilatory is unfounded.[10]

The district court determined that Lucien's preindictment silence outweighed his speedy trial assertions, reasoning that he knew the state charges against him were dropped to allow federal authorities to prosecute him.  In addition, in December 1991, Agent Harden told a relative of Lucien's living in the house where he claimed he was living openly that there was a federal warrant for his arrest.  Nevertheless, Lucien failed to assert his right to a speedy trial until after he was arrested and counsel was appointed.  Thus, we agree with the district court that Lucien's preindictment silence outweighed his speedy trial assertions.

The fourth *Barker* factor is the degree of prejudice suffered by the defendant as a result of the delay.  Here, because Lucien was responsible for most of the delay, the district court properly held that he had to demonstrate concrete proof of prejudice stemming from the delay.  *Doggett*, 112 S.Ct. at 2693; *see Robinson*, 2 F.3d at 570 (requiring "concrete proof" of prejudice when the defendant is responsible "for the lion's share of delay").  As we concluded in our preindictment delay analysis, Lucien has failed to

---

[10]   We note too that Lucien's use of several variations of his true name, his alias Antwon Watson, and the false San Antonio address that he gave at the time of his arrest all hindered the government's search efforts.

11

establish that he has suffered any actual prejudice.

Taking into account all the *Barker* factors, we hold that Lucien has failed to show that his Sixth Amendment right to a speedy trial was violated. The district court, therefore, did not err in denying Lucien motion to dismiss for lack of a speedy trial.

III. Lesser-Included Offense

Lucien next argues that the district court erred in refusing his request for an instruction on simple possession of a controlled substance in violation of 21 U.S.C. § 844(a) as a lesser-included offense under the indictment charging possession with intent to distribute cocaine base under 21 U.S.C. § 841(a). Rule 31© of the Federal Rules of Criminal Procedure provides in relevant part that a "defendant may be found guilty of an offense necessarily included in the offense charged." The district court may give a lesser-included offense instruction if, but only if, (1) the elements of the offense are a subset of the elements of the charged offense, and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense yet acquit him of the greater. *United States v. Browner*, 889 F.2d 549, 550-51 (5th Cir. 1989). We apply a two-tiered standard of review to the district court's application of this test: the first prong is reviewed *de novo*, the second for abuse of discretion. *United States v. Harrison*, 55 F.3d 163, 167 (5th Cir. 1995).

In *United States v. Deisch*, 20 F.3d 139 (5th Cir. 1994), we considered what constitutes a lesser-included offense under an indictment charging possession with intent to distribute cocaine

12

base in violation of section 841(a).  In *Deisch*, the defendant was indicted on one count of conspiracy to distribute approximately 66 grams of cocaine base in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846, and one count of possession with intent to distribute the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.  At the close of the evidence, the district court, over the defendant's objection, gave an instruction on simple possession of "a controlled substance, cocaine base, crack" in violation of 21 U.S.C. § 844(a) as a lesser-included offense under the possession with intent to distribute count.  *Id.* at 142.  The jury acquitted the defendant of both counts in the indictment but found her guilty of the lesser-included offense. Deisch appealed, arguing that the district court erred in submitting any lesser-included offense instruction.

The *Deisch* court first analyzed the structure of section 844(a)[11] and concluded that "the third sentence of section 844(a)

_____

[11]    Section 844(a) provides, in part,

"[1] It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order . . .  [2] Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year . . .  except that if he commits such offense after a prior conviction . . . for any drug or narcotic offense . . .  he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years . . .  except, further, that if he commits such offense after two or more prior convictions . . . for any drug or narcotic offense . . .  he shall be sentenced to a term of imprisonment for not less than 90 days but not more than 3 years . . .  [3] Notwithstanding the preceding sentence, a person convicted under this subsection for the possession of a mixture or substance which contains

13

creates a separate offense, an element of which is that the substance possessed contains cocaine base." *Id.* at 148 (footnote omitted). *See United States v. Michael*, 10 F.3d 838, 839 (D.C. Cir. 1993) (holding that "the third sentence of § 844(a) . . . creates an independent crime of possession of cocaine base"). Because possession of cocaine base is an element of the offense proscribed in the third sentence of section 844(a) but is not an element of any offense proscribed by section 841(a)(1), "under the `statutory elements test' a violation of the third sentence of section 844(a) can not be a lesser included offense under an indictment charging possession with intent to distribute in violation of section 841(a)(1), even if, as here, the indictment alleges that the controlled substance is cocaine base." *Deisch* at 152 (citation omitted).

By contrast, the offense denounced in the first sentence of section 844(a) is simply knowing possession of a controlled substance. The identity of the controlled substance as cocaine base is not an element of the offense proscribed in the first

_____

cocaine base shall be imprisoned not less than 5 years and not more than 20 years, and fined a minimum of$1,000, if the conviction is a first conviction under this subsection and the amount of the mixture or substance exceeds 5 grams, if the conviction is after a prior conviction for the possession of such a mixture or substance under this subsection becomes final and the amount of the mixture or substance exceeds 3 grams, or if the conviction is after 2 or more prior convictions for the possession of such a mixture or substance under this subsection become final and the amount of the mixture or substance exceeds 1 gram." 21 U.S.C. § 844(a) (bracket numbering added).

14

sentence of section 844(a); nor is it an element of the distribution offense denounced in section 841(a)(1). Thus, "simple possession of cocaine, contrary to the first sentence of section 844(a), may be a lesser included offense under a charge of possessing cocaine with intent to distribute it contrary to section 841(a)(1)." *Id.* (citations omitted).[12]

Applying this analysis to the facts of the instant case, we hold that the district court erroneously concluded that it could not give a lesser-included instruction of simple possession.[13] The

---

[12]  In *Deisch*, although we held that the district court erred in giving a lesser-included instruction on simple possession of cocaine base in violation of the third sentence of section 844(a), we did not set aside the jury's conviction because it "necessarily found her guilty of a violation of the first sentence of section 844(a) [simple possession of a controlled substance]." *Id.* at 152. Because all cocaine base is a controlled substance, the jury that found Deisch guilty of possession of cocaine base in violation of the third sentence of section 844(a) necessarily (albeit perhaps implicitly) found her guilty of possession of a controlled substance (cocaine base) in violation of the first sentence of 844(a).  Thus, we affirmed Deisch's conviction under the first sentence of section 844(a) but vacated her sentence, which was imposed under the third sentence of section 844(a) and remanded for resentencing.  *Id.*

[13]  The district court initially indicated that it would give the requested instruction, but then apparently changed its mind based on *United States v. Michael*, 10 F.3d 838 (D.C. Cir. 1993).  (Our decision in *Deisch* was not handed down until after Lucien's conviction).  Based on its reading of *Michael*, the district court concluded that simple possession of cocaine base is not a lesser-included offense under the indictment charging possession with intent to distribute cocaine base in violation of section 841(a)(1) and therefore presumed that it could not give the requested instruction.  The district court, however, appears to have overlooked the separate offense denounced in the first sentence of section 844(a), possession of a controlled substance.  Under *Deisch* and *Michael*, the district court could have given a lesser-included offense instruction on simple possession of a controlled substance contrary to the first sentence of section 844(a).

15

superseding indictment charged Lucien with possession "with intent to distribute cocaine base, a Schedule II Narcotic Drug Controlled Substance (here, cocaine base) in violation of [21 U.S.C. § 841(a)(1)]."  Thus, under *Deisch* and the statutory elements test, possession of a controlled substance (cocaine, here in the form of cocaine base) in violation of the first sentence of section 844(a) is a lesser-included offense under the superseding indictment in this case.

Because Lucien satisfied the first prong of the two-prong test for determining whether a defendant is entitled (on proper request) to a lesser-included offense instruction, we turn now to the second inquiry, namely, whether the evidence at trial was such that a jury could rationally convict him of the lesser offense (possession of a controlled substance) yet acquit him of the greater (possession with intent to distribute cocaine base).  We normally review for abuse of discretion a district court's determination of this issue. *Harrison*, 55 F.3d at 167.  Because the district court in this case erroneously concluded that it could not give Lucien's requested lesser-included offense instruction under the statutory elements test, it did not make a specific finding as to the second prong of the test.  The record, however, reflects that the district court initially indicated that it would give the lesser-included instruction but subsequently determined that it could not based on its misreading of *Michael*.  This implies that the district court thought that the evidence at trial raised the possibility that a rational jury could convict Lucien of simple possession but acquit

16

him of possession with intent to distribute cocaine base.

In *Harrison*, the defendant was indicted for possession with intent to distribute five grams or more of cocaine base in violation of section 841(a)(1). The district court refused the defendant's request for a lesser-included instruction on simple possession of a controlled substance in violation of section 844(a). The jury subsequently convicted Harrison of possession with intent to distribute five grams or more of cocaine base, and Harrison appealed, arguing that the district court should have given his requested lesser-included instruction. On appeal, we noted that the statutory elements prong was satisfied and thus focused our inquiry on "whether the district court abused its discretion in concluding that, based on the evidence, a jury could not rationally find Harrison guilty of simple possession, yet acquit him of possession with the intent to distribute." *Id.* at 167 (footnote omitted). The evidence at trial showed that the police seized 49 grams of cocaine base from Harrison's residence and found a loaded weapon and cash in the same drawer as the cocaine base. Based on these facts and "unrebutted testimony that such facts and circumstances were consistent with an intent to distribute and not with possession for personal use," the court concluded that "no rational juror could conclude that Harrison possessed the crack for his personal use, with no intent to distribute it." *Id.* at 168.

In *Turner v. United States*, 90 S.Ct. 642 (1970), the Supreme Court held that the defendant's possession of 14.68 grams of

17

cocaine was insufficient to sustain a conviction for distribution of cocaine. *Id.* at 656 (holding that possession of 14.68 grams of a cocaine mixture "is itself consistent with Turner's possessing the cocaine not for sale but exclusively for his personal use"). In *United States v. Chase*, 838 F.2d 743 (5th Cir.), *cert. denied*, 108 S.Ct. 2022 (1988), the defendant was indicted for, *inter alia*, possession of cocaine with intent to distribute, but the jury convicted him of simple possession of cocaine as a lesser-included offense. On appeal, the defendant argued that the district court erred in giving the lesser-included instruction because the evidence at trial was inconsistent with simple possession. We held that the district court properly instructed the jury to consider simple possession of cocaine as a lesser-included offense because a "rational jury was entitled to find from the evidence that Chase intended to consume the one-quarter ounce [approximately 7 grams] of cocaine he obtained . . . rather than distribute it." *Id.* at 747.

The government argues that the evidence at trial was such that a reasonable jury could not acquit Lucien of possession with intent to distribute cocaine base but still convict him of possession of a controlled substance. In support of this argument, the government relies on the amount of cocaine base seized at the Manor Road apartment (16.48 grams), the testimony of Officer Valera that the amount seized was a distributable quantity, the $1200 in cash and the two guns found in the apartment, the foil wrappings found with the cocaine base, and the fact that Lucien was flushing the

18

drugs down the toilet when the police arrived. At trial, Officer Valera testified that, based on his experience, the amount of cocaine seized from the Manor Road apartment was a distributive amount and was not for personal use. The government places great weight on this testimony and argues that it shows that a rational jury could not find Lucien guilty of simple possession but acquit him of possession with intent to distribute. We disagree. On cross-examination, defense counsel asked Valera if fifteen grams of cocaine base would be a distributive amount, and he testified that such an amount was "still large enough for distribution in [his] opinion." Based on our review of the entirety of Valera's testimony, a jury could rationally have understood Valera to be saying merely that 16.48 grams is a distributable amount; in other words, it is not so small that it could not be distributable, but not that it was so large that it could not be for personal use, especially given that both Lucien and Campbell were in the apartment in which the cocaine base was found. *See United States v. Latham*, 874 F.2d 852, 863 (1st Cir. 1989) (holding that possession of one ounce of cocaine, or 28.35 grams, *by two persons* was insufficient to warrant an inference of possession with intent to distribute).

Because here the amount alone is an insufficient basis on which to conclude that a rational jury could not convict Lucien of simple possession yet acquit him of possession with intent to distribute, we consider the other evidence that the government maintains indicates possession with intent to distribute cocaine

19

base.  First, the government places great emphasis on the packaging, asserting that the plastic bag containing several aluminum foil wrappers indicates that the cocaine base was for distribution rather than personal consumption.  While a reasonable juror could so conclude, not all reasonable jurors would necessarily have to.  On cross-examination, Valera conceded that a person who purchased three packages of cocaine base for personal use would have three aluminum foil packets.  Therefore, the fact that there were several aluminum foil wrappers in the toilet could be considered by a reasonable juror as not inconsistent with possession for personal use.[14]  Second, the government argues the $819 in cash found in the bathroom sink and the $408 in cash found in one of the bedrooms also show possession with intent to distribute cocaine base.  Because there is no evidence in the record about Lucien's or Campbell's respective occupations, we note that it is possible that Lucien or Campbell earned this money other than from selling cocaine base.  The government also asserts that the fact that three guns were found in the apartment is evidence that Lucien was distributing cocaine base.  Although we do not discount the prevalence of guns in drug trafficking, we do not place undue weight on the presence of the guns in this case because Lucien and Campbell could have untold reasons, nefarious and

---

[14]    At oral argument, the government implied that the fact that Lucien was attempting to flush the cocaine base down the toilet was indicative of distribution.  Because it is illegal to possess cocaine base, flushing the drugs down the toilet could be considered by a reasonable juror as consistent with simple possession.

20

otherwise, for keeping guns in the apartment. *United States v. Gibbs*, 904 F.2d 52, 59 (D.C. Cir. 1990) ("While the presence of weapons may be a factor in considering whether the defendants intended to distribute the cocaine, the *mere presence of weapons* is not, in and of itself, dispositive of such intent. For example, the cautious buyer may feel the gun improves his bargaining position; or, the drug user may also be a thief who robs persons at gunpoint to support his habit.") (citation omitted) (emphasis in original).

We have no doubt that the evidence at trial was sufficient to convict Lucien of possession with intent to distribute cocaine base, but "when the issue is the propriety of a lesser-included offense instruction, the test is whether a reasonable jury could nonetheless find [Lucien] guilty only of simple possession." *Id.* (citation omitted). We hold that, based on the evidence at trial, a reasonable jury could find Lucien guilty of simple possession but acquit him of possession with intent to distribute. If the amount of the cocaine base seized at the Manor Road apartment was significantly greater or if there was additional evidence showing distribution, such as (by way of example only) testimony tending to indicate that sales or distributions of some kind were being made at or from the apartment, the evidence might support the district court's refusal to give the lesser-included instruction of simple possession. At some point, however, there is a range of quantities and other circumstances where it is *the jury's* role to decide whether the evidence supports simple possession or possession with

21

intent to distribute. At one extreme, there are cases in which no reasonable jury, confronted with the facts, could find that the defendant possessed the drug for any reason other than distribution. *See*, *e.g*, *United States v. White*, 972 F.2d 590, 596 (5th Cir. 1992) (holding that the district court did not err in refusing to give lesser-included instruction of simple possession where the defendants were found with twenty-one kilos of cocaine and reasoning that "no rational jury could find that they did not intend to distribute the cocaine [and that] [t]he sheer quantity of the drugs involved negates an inference of personal use"), *cert. denied*, 113 S.Ct. 1651 (1993); *United States v. Espinosa*, 827 F.2d 604, 615 (9th Cir. 1987) (holding that the defendant's possession of 69 pounds of cocaine justified an instruction on possession with intent to distribute and that the district court did not err in refusing to give a lesser-included instruction of simple possession), *cert. denied*, 108 S.Ct. 1243 (1988).[15]

At the opposite extreme are cases in which no reasonable jury could find that the defendant possessed the drug with the intent to distribute. *See*, *e.g.*, *Turner*, 90 S.Ct. at 655-56 (possession of 14.68 grams of cocaine was insufficient to sustain conviction for distribution). In between these two extremes, however, there are

---

[15] In *Harrison*, we affirmed the district court's refusal to give a lesser-included instruction of simple possession of a controlled substance where the evidence showed that the defendant possessed 49 grams of cocaine base. In addition to the fact that the defendant alone possessed 49 grams of cocaine base, we noted that the cocaine base was found in the same drawer as a gun and some cash and that the government introduced unrebutted testimony that the facts and circumstances of the case were consistent with distribution rather than personal use. *Id.* at 167-68.

many cases in which it is the jury's province to determine whether the evidence demonstrates simple possession or possession with intent to distribute. *See Gibbs*, 904 F.2d at 58-59 (holding that district court erred in refusing to give lesser-included offense instruction on simple possession where evidence showed that five persons possessed 15.5 grams of cocaine because "we cannot say that a mere 15.5 grams of cocaine was inconsistent with personal use"); *United States v. Burns*, 624 F.2d 95, 104 (10th Cir.) (holding that "the evidence was sufficient to support the jury's inference that these appellants possessed cocaine with an intent to distribute, but the jury was free also not to draw such inference. [The appellants] were entitled to jury consideration of the offense of simple possession."), *cert. denied*, 101 S.Ct. 361 (1980) (footnote omitted). Accepting the argument that 16 grams is a distributive quantity that precludes a verdict on the lesser-included offense would effectively eliminate the range of cases in which the jury determines what the evidence shows, thereby displacing the jury's important role in the criminal process. Because a reasonable jury could convict Lucien of simple possession but acquit him of possession with intent to distribute, we hold that the district court erred in refusing Lucien's request for a lesser-included instruction on simple possession of a controlled substance.[16]

---

[16] We do not imply that the amount of the drugs seized is the only yardstick by which the district court should measure whether the evidence at trial permits a rational jury to find the defendant guilty of simple possession but acquit him of possession with intent to distribute. Even if the amount of drugs seized is relatively small, the district court may refuse to give the lesser-included instruction on simple possession when there is other

Accordingly, we reverse his conviction for possession with intent to distribute cocaine base in violation of section 841(a)(1) and remand for another trial.

The jury also convicted Lucien of possession of a firearm during and in relation to the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Specifically, the indictment alleged that Lucien "during and in relation to [his] possession with intent to distribute cocaine base in violation of [21 U.S.C. § 841(a)(1), *as alleged in Counts One and Two of this indictment*, did use and carry a firearm . . . in violation of [18 U.S.C. § 924(c)]." (emphasis added). Because the jury acquitted Lucien on Count One and we have reversed his conviction

---

sufficient evidence that compellingly supports distribution. *See*, *e.g.*, *United States v. Johnson*, 734 F.2d 503, 505-06 (10th Cir. 1984) (upholding district court's refusal to give a lesser-included offense instruction on simple possession in a case involving 26.63 grams of cocaine when evidence showed that the defendant owned drug paraphernalia of the kind used by drug dealers and included testimony by a witness describing numerous drug transactions with the defendant).

In many cases, the evidence is such that, despite the small quantity of drugs seized, the intent to distribute is still in dispute. In such a case, it is the province of the jury to determine whether the evidence proves possession with intent to distribute or simple possession. For example, in *United States v. Garcia-Duarte*, 718 F.2d 42 (2nd Cir. 1983), the district court refused to give a lesser-included offense instruction of simple possession in a case involving 0.23 grams of cocaine, and the jury convicted the defendant of possession with intent to distribute. On appeal, the Second Circuit held that "the issue of intent to distribute was clearly in dispute, and the district judge erred by not submitting to the jury the lesser included offense charge of simple possession." *Id.* at 48. In so holding, the court in *Garcia-Duarte* did not imply that the evidence was insufficient to sustain the defendant's conviction for possession with intent to distribute. Rather, the court held that the jury should have been permitted to weigh the evidence and determine whether to convict the defendant of simple possession or possession with intent to distribute. *Id.*

24

on Count Two, his conviction on Count Three as alleged in the indictment cannot stand.[17]

## Conclusion

For the foregoing reasons, we reverse Lucien's convictions and remand for retrial.

REVERSED AND REMANDED

---

[17] Because we reverse Lucien's convictions, we need not reach his argument concerning several alleged instances of prosecutorial misconduct, although we note that these alleged errors appear harmless and unpreserved in any event.