Revised January 21, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-50396**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**WILLIAM E. BERGFELD,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Western District of Texas
_____

January 16, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellant, William E. Bergfeld, appeals his conviction following a conditional plea of guilty for the interstate transportation of misbranded devices in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), and aiding and abetting in violation of 18 U.S.C. § 2. Bergfeld argues that his conviction should be reversed because his Sixth Amendment right to a speedy

trial was violated.  We hold that the district court erred in its analysis and, therefore, reverse Bergfeld's conviction and sentence.


## I.   BACKGROUND

From 1992 to 1994, Enrique Hernandiz Plou (Plou), a Spanish national living in Texas, was the president of SORISA U.S.A. (SORISA), an affiliate of S.O.R. Internacional, S.A. (S.O.R.). S.O.R. is a manufacturer and exporter of beauty equipment, and is based in Barcelona, Spain.  SORISA imported cosmetology steamers, vaporizers, and other skin care products into the United States, which had been manufactured by S.O.R.  Plou worked in San Antonio with Carlos Soriano Martinez (Martinez) and Jose Luis Cabello (Cabello).  Bergfeld was one of SORISA's biggest volume American distributors.

In 1992, Plou learned that the devices he was importing from Spain were classified as medical devices by the Food and Drug Administration (FDA), and that they could not be legally imported without FDA approval.  After United States Customs officials detained one of SORISA's shipments at the direction of the FDA, Plou, Cabello, Martinez, and Bergfeld developed a plan to evade FDA detection.

They set up a dummy company with a different name, PEYBEL U.S.A. (PEYBEL), and imported the devices in that name through a

2

different American port.  After learning of this scheme, FDA investigators executed a search warrant at the SORISA facility in San Antonio.  Plou, who was in California, heard of the search and fled the country.  Sometime later, Cabello and Martinez also left the United States.

On June 7, 1995, a grand jury handed down a nine count indictment charging Bergfeld, Plou, Martinez, Cabello, and SORISA with the following crimes:  count one for conspiring to defraud the FDA under 18 U.S.C. § 371; counts two and three for the interstate transportation of misbranded devices in violation of the Federal Food, Drug, and Cosmetic Act under 21 U.S.C. §§ 331(a) and 333(a)(2), and aiding and abetting under 18 U.S.C. § 2; counts four through eight for smuggling under 18 U.S.C. § 545, and aiding and abetting under 18 U.S.C. § 2; and count nine for obstructing justice under 18 U.S.C. § 1505, and aiding and abetting under 18 U.S.C. § 2.  Because the government believed it extremely unlikely that Bergfeld's alleged co-conspirators would voluntarily return to this country knowing they were under indictment, the United States moved to have the indictment placed under seal the day it was returned by the grand jury.  Also on that day, arrest warrants were issued for all of the defendants.

Although the government discovered that it would not be possible to extradite Plou, Martinez, or Cabello from Spain, it requested that the arrest warrants be entered into the National Crime Information Computer (NCIC) and the Treasury Enforcement

3

Communications System (TECS) network on June 12, 1995. This was the extent of the government's effort to apprehend Plou, Martinez, and Cabello. The warrant for Bergfeld was not entered into the computer systems so that his alleged co-conspirators could be arrested prior to Bergfeld's arrest. The government never pursued arresting Bergfeld, and Bergfeld did not know about the indictment's existence. Notably, the government discovered in 2001, *after* the district court denied Bergfeld's motion to dismiss the indictment, that the only name actually entered into the NCIC and TECS was Plou's.

Government records show that Plou reentered the United States three times after 1994. Plou first reentered this country on October 24, 1996, and then again on July 10, 1999. On the last occasion, September 10, 2000, he was arrested. Only then did the government request that the indictment against Bergfeld be unsealed. After being notified about the indictment by the government for the first time, Bergfeld voluntarily appeared and was arraigned on October 18, 2000. On November 1, 2000, Bergfeld moved to dismiss the indictment, alleging that the delay between indictment and trial violated his Sixth Amendment right to a speedy trial. The district court denied the motion.

Bergfeld entered a conditional plea of guilty to count two of the indictment on February 21, 2001, reserving the right to appeal the denial of his constitutional speedy trial complaint. On April

4

19, 2001, Bergfeld was sentenced to serve 12 months and one day of confinement, fined five thousand dollars, ordered to pay a $50 special assessment, and placed on one year of supervised release at the conclusion of his sentence. Bergfeld timely filed his notice of appeal and remains on bond pending the resolution of this appeal.

## II. STANDARD OF REVIEW

In analyzing a defendant's Sixth Amendment speedy trial claim based on post-indictment delay, which is at issue in this case, we must consider four factors established by the Supreme Court: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's diligence in asserting his Sixth Amendment right; and (4) prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972). We review for clear error a district court's findings in applying the elements of this balancing test. *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).

## III. DISCUSSION

In *Doggett v. United States*, the Supreme Court clarified how the four factors used to analyze a defendant's Sixth Amendment speedy trial claim based on a post-indictment delay are weighed, and the burden each party carries. 505 U.S. 647 (1992). The

5

threshold inquiry is whether the delay was long enough to trigger a "speedy trial" analysis. *Id.* at 651-52. Generally, it is accepted that a post-accusation delay approaching one year is sufficient. *Id.* at 652 n.1.

Next, the length of the delay, the reason for the delay, and defendant's diligence in asserting his or her rights is weighed against the prejudice to the defendant. *Id.* at 656-57. Depending on how heavily the first three factors weigh for or against the defendant, prejudice is presumed in some cases, relieving the defendant of any burden to show actual prejudice. *Id.* One lesson from **Doggett** is that the longer the delay, the greater the presumption of prejudice. *Id.* at 656.

The district court, citing **Barker** and **Doggett**, recognized its duty to weigh these factors. Nonetheless, it ultimately concluded that the length of the delay and the reason for the delay did not weigh so heavily in Bergfeld's favor as to alleviate his burden of demonstrating actual prejudice. And, because the court concluded that he failed to show actual prejudice, it found that his right to a speedy trial had not been violated. The correctness of the district court's determination that Bergfeld was required to show actual prejudice is the crux of this appeal. Based on the Supreme Court's decision in **Doggett**, we conclude that the district court's analysis was incorrect.

The district court correctly recognized that the length of the delay between the time Bergfeld was indicted and the time the indictment was unsealed and he first appeared in court weighed heavily in Bergfeld's favor. This is not surprising given the fact that this time period exceeded five years. *See, e.g., Doggett*, 505 U.S. at 652; *Barker*, 407 U.S. at 530; *United States v. Lucien*, 61 F.3d 366, 371 (5th Cir. 1995). Furthermore, the court correctly recognized that the "diligence of the defendant" element weighed exclusively in Bergfeld's favor, as he had no idea the indictment existed until it was unsealed.

However, in analyzing the "reason for the delay" element, the district court decided that "in light of the fact that the Government acted, at least at the beginning, in pursuit of legitimate prosecutorial interests," prejudice to Bergfeld cannot be presumed. Specifically, the district court found that the government's interest in hiding the existence of the indictment in hopes the other defendants would be lulled into a false sense of security and reenter the country was valid.

In *Doggett*, the Court explained that "different weights are to be assigned to different reasons for delay." *Doggett*, 505 U.S. at 657. If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice. *Id.* at 656. On the other hand, if "the Government had intentionally held back in its prosecution . .

7

. to gain some impermissible advantage at trial," that fact weighs heavily against the government. *Id.* Finally, the *Doggett* Court explained that:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Id.* at 656-57.

In the case before us, the district court concluded that the government's delay should be treated as falling within *Doggett*'s "official negligence" category. We agree with this conclusion. The district court, however, placed too great a weight on its conclusion that the government's initial delay was legitimate. Specifically, the district court stated:

> The Court finds that the Government's justification[s] for not arresting the Defendant at the outset are valid. The Government attempted to indict a group of individuals who, in the Government's view, are guilty of participating together in a criminal scheme. The Government wished to prosecute them together, and the Government did not want to tip any of the Defendants off by arresting one when it could not arrest them all. Moreover, the Government was not negligent in its attempts to reach the absent Defendants. As the Government points out, it investigated the possibility of extradition, and it posted the outstanding warrants for these men.
>
> These findings do not mandate an automatic win for the Government, however. As time went on, Bergfeld's interest in a fair trial increased. Certainly, the Government did not diligently

8

attempt to apprehend Bergfeld himself, who remained at the same address the entire time the indictment was sealed. In addition, the Government concedes that it had at least two opportunities to catch some of the Defendants in this country and failed to do so. Therefore, the Court finds that the justification for the delay does not conclusively decide this case in favor of the Government; however, the Court also concludes that, in light of the fact that the Government acted at least at the beginning, in pursuit of legitimate prosecutorial interests, that Bergfeld's burden to show some actual prejudice remains intact at least to some degree.

Notably, four months after Bergfeld entered his conditional plea of guilty, the government filed an amended statement indicating that it has since discovered that it did *not* post warrants for two of the absent defendants, Martinez and Cabello. Thus, the extent of the government's pursuit of these two defendants for a five-year period amounted to its initial inquiry about whether they could be extradited. Based on the district court's overall reasoning quoted above, the fact that these warrants were not actually posted should have tilted the scale in Bergfeld's favor.

However, the real error in the district court's reasoning lies in its analysis of the "prejudice" factor. Specifically, the court looked to Bergfeld's evidence of prejudice, decided that the evidence was not convincing, and then concluded that the lack of prejudice evidence reduced the weight of the other three factors:

In sum, the Court concludes that the first [*Barker*] factor weighs heavily in favor of the Defendant. Five years well exceeds a length of time that might

9

be held to be presumptively excessive. The third factor, whether the Defendant asked for speedy resolution of his trial also weighs in the Defendant's favor. Because he did not know of the indictment, he could not make the request. The second factor weighs slightly against the Government. While the Government's interest in bringing *all* the Defendants to trial together was initially valid, that interest, in the Court's view, diminished as the years passed and the Defendant's interest in a speedy trial increased.

The fourth factor, however, weighs strongly against dismissing the indictment [because Bergfeld has not demonstrated prejudice], and resolution of this factor has some bearing on each of the other factors.

The court's reasoning is contrary to **Doggett**. The first three factors should be used to determine whether the defendant bears the *burden* to put forth specific evidence of prejudice (or whether it is presumed); nothing in **Doggett** endorses the district court's performing the analysis the other way around, i.e., using the absence of specific evidence of prejudice to reduce the weight of the other three factors.[1]

The Supreme Court in **Doggett** stated that "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither

---

[1]Oddly enough, while the district court applied **Barker** and **Doggett** incorrectly, there is another place in its order where the relationship between the factors is correctly explained: "It hardly makes sense, then, to weigh the opposing arguments regarding prejudice to determine whether prejudice will be presumed. The presumption of prejudice, and its effect, is the question to be answered."

10

extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief."  505 U.S. at 658 (footnotes and citations omitted).  The delay in *Doggett* was eight years, the defendant was unaware of the indictment, and the government was negligent in failing to diligently pursue the defendant.  *Id.* at 657.  Based on these facts, the *Doggett* Court held that the defendant's failure to demonstrate actual prejudice was not fatal, as the weight of these facts warranted a presumption of prejudice.  *Id.* at 657-58.  In so holding, the Court emphasized that "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice."  *Id.* at 657. Similarly, we conclude that under a correct application of *Doggett*, the five-year delay in the present case caused by the government's negligence entitles Bergfeld to a presumption of prejudice.[2]  Had the delay been considerably shorter, Bergfeld might well have been properly required to demonstrate prejudice.[3]

---

[2]Significantly, the Ninth Circuit in *United States v. Shell*, also followed *Doggett* to hold that a five-year delay caused by the government's negligence is sufficient to give rise to a presumption of prejudice.  *See* 974 F.2d 1035, 1036 (9th Cir. 1992).

[3]Although the five year statute of limitations under 18 U.S.C. § 3282 was not violated in this case because Bergfeld was indicted within the statutory period, we are well aware of Congress' intent behind such a statute.  *See* *Toussie v. United States*, 397 U.S. 112, 114-15 (1970) (explaining that statute of limitations is designed to insure that defendants do not have to "defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment

11

## IV.  CONCLUSION

For the foregoing reasons, we hold that Bergfeld's Sixth Amendment right to a speedy trial was violated.  Therefore, we reverse the district court's judgment.

---

because of acts in the far-distant past").  The same concerns are implicated in post-indictment speedy trial cases.  Thus, from a policy standpoint, we find it significant in this case that had the government waited to indict Bergfeld until the date it unsealed his indictment and finally notified him of its existence, it would have been limitations barred.

GARWOOD, Circuit Judge, dissenting in part.

While I agree with much of what is said in Judge DeMoss's opinion, in my view we should not render judgment but should rather remand for the district court to reconsider the matter.

The district court found that the government's intentional delay was initially legitimate, a conclusion with which I agree and which Judge DeMoss's opinion does not dispute. The district court also correctly found that as time went on this justification dissipated. However, the district court never fixed any even approximate period after which the justification was no longer valid. Such a determination, it seems to me, is a function of both the mere passage of time and of the government's efforts to apprehend Plou, Martinez and Cabello. As to Plou, the district court made no specific finding whether the failure to post his name on Customs' "Look-Out" system before September 1, 1999 was negligent and what the delay likely would have been had this been accomplished with reasonable promptness (Plou was apprehended when he entered after that posting but not when he entered in October 1996 and July 1999). As to Martinez and Cabello, the district court was not aware until after sentencing that the warrants for these defendants had not been properly posted.

13

The majority appears to treat the *entire* delay from the return and sealing to the unsealing of the indictment as the proper yard-stick by which to determine presumed prejudice under *Doggett*. But *Doggett* itself considered only the unjustifiable portion of the delay for that purpose. *Id*. 112 S.Ct. 2686 at 2694. In my view, there is no plain error in the district court's finding that *not all* the delay was unjustifiable.[****] That court should, in the first instance, determine what portion of the delay *was* unjustifiable and apply *Doggett* accordingly, subject to appropriate review by this court should either party appeal.

---

[****]We review the district court's application of the relevant factors for clear error. *United States v. Lucien*, 61 F.3d 366, 371 (5th Cir. 1995).