**UNITED STATES of America**

v.

**William Randy HAY**

No. 4:99–CR–228–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 20, 2002.

Frederick M. Schattman, U.S. Atty.'s Office, Fort Worth, TX, for U.S.

Claudia Montani, Federal Public Defender, Fort Worth, TX, for William Randy Hay.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Before the court for consideration and decision is the motion of defendant, WILLIAM RANDY HAY, ("Hay") to dismiss. Hay asserts two grounds for dismissal, first, that the case should be dismissed because of the failure of the government to provide Hay a speedy trial as required by the Sixth Amendment to the United States Constitution, and, second, that there has been such an unnecessary delay in bringing Hay to trial that the indictment should be dismissed under the authority of Rule 48(b) of the Federal Rules of Criminal Procedure. The court has determined, after a hearing held February 15, 2002, that the motion should be granted, and that each ground presents an independent reason why the case should be dismissed.

### I.

#### Facts

The indictment against Hay was returned October 13, 1999; and, the case was assigned to The Honorable Eldon Mahon, one of the judges of this court. It has three counts, the first charging Hay with possession with intent to distribute methamphetamine, count two charging him with possession with intent to manufacture methamphetamine, and the third charging

him with knowingly possessing five firearms in furtherance of a drug trafficking crime prosecutable in a court of the United States. Assistant United States Attorney Frederick M. Schattman was responsible for the prosecution.

A warrant for Hay's arrest was issued October 14, 1999. The case was reassigned to the undersigned judge on January 7, 2002. On January 11, 2002, Hay was brought before United States Magistrate Judge Charles Bleil for an initial appearance, at which time the Federal Public Defender for the Northern District of Texas was appointed to represent Hay in this case. A temporary detention hearing was conducted by Judge Bleil on January 11, 2002; and, Hay was ordered detained. Hay appeared before the undersigned judge on January 18, 2002, when he entered a plea of not guilty to the three counts of the indictment.

The government offered no meaningful explanation concerning why there was such a lapse of time between the date of the return of the indictment and the date when Hay was brought before the court for trial proceedings. AUSA Schattman did not appear at the hearing on the motion to dismiss, nor was his absence explained. The government was represented at the hearing by Assistant United States Attorney J. Michael Worley, who seemed to have limited knowledge of the case, and virtually no knowledge of the cause of the delay in prosecution. The undisputed evidence establishes the following:

When the indictment was returned against Hay, state felony charges were pending against him in Tarrant County, Texas. He had been booked into the Tarrant County Jail on August 12, 1999. Charges also were pending against Hay in Cooke County, Texas. He was transferred from the Tarrant County Jail to the Cooke County Jail on October 10, 1999, where he was located when the indictment was returned and the warrant for Hay's arrest was issued by this court. On October 15, 1999, the United States Marshal issued a detainer to the Cooke County authorities based on the offenses charged by the indictment in this case. The detainer would cause Hay to be retained in custody by the state authorities, pending transfer to federal custody, once Hay otherwise would be eligible for release from state custody.

In late 1999, there were several conversations between AUSA Schattman, Janelle Haverkamp, the District Attorney for Cooke County, Texas, and Jim Jack Hatcher, the attorney representing Hay in the Cooke County criminal proceedings, as a result of which an agreement was negotiated to have Hay plead guilty to the charges in the indictment in the instant case and then be returned to Cooke County, Texas, to plead the state charges, with the state sentence to run concurrent to the federal sentence. In early December 1999, that agreement was made known to the state court judge presiding over Hay's criminal proceedings in Cooke County. Because of the agreement, the Cooke County case was continued so that the federal government might proceed against Hay in the instant case. On December 16, 1999, the District Attorney in Cooke County, acting through an assistant, sent by facsimile transmission the following letter to AUSA Schattman:

Mr. Fred Schattman

Assistant United States Attorney

801 Cherry St., Suite 1700

Fort Worth, Texas 76102

Re: United States of America vs William Randy Hay

Cause # 4–99–CR–228–E

Dear Fred:

We recently continued our state case on the above named defendant so that

he could dispose of his case in your jurisdiction. Pursuant to our last conversation, you believed you could get him arraigned fairly quickly once he was out of our jail and back there. We have continued our case to February in hopes that would give you time to get a PSI done and get the plea finalized.

Please let me know if I can be of assistance in the disposition of your case.

Sincerely,

/s/

Barry Retherford

Assistant District Attorney

Motion, Ex. 3.

Although the government stipulates that the foregoing letter was sent, AUSA Worley represented to the court at the hearing that the letter could not be found in the office of the prosecutor, and that that prosecutor's office has no record that anything was done by that office in response to the letter. Indeed, AUSA Worley indicated that the prosecutor has no record of having taken any action in connection with this case after the indictment was returned and before Hay was put in federal custody in early 2002. The prosecutor offered no explanation for this apparent total inactivity on the part of the prosecutor's office for a period of about twenty-seven months after the indictment was returned. However, AUSA Worley informed the court at the hearing that AUSA Schattman recalls that there were discussions of the kind disclosed by the evidence at the hearing. But, no explanation was given for AUSA Schattman's apparent neglect of this case.

As the December 16, 1999, letter to AUSA Schattman indicated would occur, Hay was transferred by the state officials from the Cooke County Jail back to the Tarrant County Jail on February 3, 2000. The federal detainer followed Hay from Cooke County and to Tarrant County. On April 6, 2000, Hay became eligible for release from state custody by having posted the required bonds. Nevertheless, he continued to be held in custody in Tarrant County because of the federal detainer.

Hay was held in state custody pursuant to the federal detainer until the summer of 2001. On March 5, 2001, he was transferred back to Cooke County to face disposition of the charges pending against him there. The explanation given by Hay's Cooke County attorney, Mr. Hatcher, for the transfer back to Cooke County was as follows:

After several conversations with Assistant United States Attorney (AUSA) Fred Schattman and Jeanelle [sic] Haverkamp, the District Attorney for Cooke County, an agreement was negotiated to have Mr. Hay plead to the federal charges pending in the Northern District and then bring him to Cooke County to plead to the state charges, which would run concurrent to his federal time. In early December, this agreement was made known to the District Judge presiding over the 235th Judicial District Court of Cooke County. Based on this representation, the District Court granted a continuance of the state case. . . .

It is my understanding that the Cooke County District Attorney's Office had discussed the above with AUSA Schattman and that Mr. Schattman would arrange for Mr. Hay to be arraigned and have his case disposed of in the Northern District. However, after over a year of delay without disposition of his federal case, we had no choice but to plead Mr. Hay to the pending state charge.

Motion, Ex. 2.

Hay pleaded guilty to the Cooke County charges on July 20, 2001, and was sen-

tenced to serve four years in the custody of the Institutional Division of the Texas Department of Criminal Justice. He was paroled in late December 2001, at which time, pursuant to the federal detainer, he was caused to be taken into custody by the U.S. Marshal Service in the Southern District of Texas. He was then transferred to this district for trial.

After Hay arrived back in Tarrant County in 2000, he attempted to make telephone contact with the office of the United States Attorney in Fort Worth concerning disposition of the charges in the instant action, but was unsuccessful because the office would not accept the collect calls Hay was required to make from the jail pay phone. Also, during the summer of 2000 he wrote a letter to that office "asking them to deal with this case," but he received no reply. 2/15/02 Tr. (rough draft) at 35. Hay experienced a great deal of anguish while in custody pursuant to the federal detainer concerning the outstanding federal charges, and over the uncertainty as to the disposition and outcome of those charges. The parties stipulated that in the summer of 2001, Hay suffered four felony convictions based on conduct that occurred before the indictment in this case. Those convictions could adversely impact Hay's criminal history category for any sentencing for the offenses charged by the indictment in the instant case if the sentencing were to occur after the date of the convictions. Also, because of the non-action of the federal prosecutor, Hay lost the benefit of the agreement AUSA Schattman, the District Attorney in Cooke County, and Hay's Cooke County attorney had reached.

## II.

### Analysis

A. *The Sixth Amendment Ground.*

    "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. CONST. amend. VI. The return of an indictment when a defendant has not been arrested starts the running of the speedy trial time under the Sixth Amendment. *United States v. Carter,* 603 F.2d 1204, 1206 n. 2 (5th Cir.1979). The determination of whether a defendant has been deprived of his Sixth Amendment right to a speedy trial involves a consideration of four factors: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

In *Doggett v. United States,* the Supreme Court explained the importance of the first (length of delay) inquiry, saying:

> The first of these is actually a double inquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, [*Barker v. Wingo,*] 407 U.S. [514,] 530–531, 92 S.Ct. 2182, 33 L.Ed.2d 101 [ (1972) ], since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *See id.,* at 533–534, 92 S.Ct. 2182. This latter inquiry is significant to the speedy trial analysis because, as we discuss below, the presumption that pretrial delay has prejudiced the accused intensifies over time.

505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Recently, the Fifth

Circuit instructed on its interpretation of *Doggett,* saying:

> In *Doggett v. United States,* the Supreme Court clarified how the four factors used to analyze a defendant's Sixth Amendment speedy trial claim based on a post-indictment delay are weighed, and the burden each party carries. 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The threshold inquiry is whether the delay was long enough to trigger a "speedy trial" analysis. *Id.* at 651–52, 112 S.Ct. 2686. Generally, it is accepted that a post-accusation delay approaching one year is sufficient. *Id.* at 652 n. 1, 112 S.Ct. 2686.
>
> Next, the length of the delay, the reason for the delay, and defendant's diligence in asserting his or her rights is weighed against the prejudice to the defendant. *Id.* at 656–57, 112 S.Ct. 2686. Depending on how heavily the first three factors weigh for or against the defendant, prejudice is presumed in some cases, relieving the defendant of any burden to show actual prejudice. *Id.* One lesson from *Doggett* is that the longer the delay, the greater the presumption of prejudice. *Id.* at 656, 112 S.Ct. 2686.

*United States v. Bergfeld,* 280 F.3d 486, 488 (5th Cir.2002). And:

> The first three factors should be used to determine whether the defendant bears the *burden* to put forth specific evidence of prejudice (or whether it is presumed); nothing in *Doggett* endorses the district court's performing the analysis the other way around, i.e., using the absence of specific evidence of prejudice to reduce the weight of the other three factors.

*Id.* at 490–91 (footnote omitted). The Fifth Circuit discussed the three degrees of diligence, or lack thereof, and the role of each in the analysis, saying:

> If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice. [*Doggett,* 505 U.S.] at 656, 112 S.Ct. 2686. On the other hand, if "the Government had intentionally held back in its prosecution ... to gain some impermissible advantage at trial," that fact weighs heavily against the government. *Id.* Finally, the *Doggett* Court explained that:
>
> > Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.
>
> *Id.* at 656–57, 112 S.Ct. 2686

*Id.* at 489.

In this case, the government concedes that the length of the delay is sufficient to raise the presumption of prejudice. Clearly the delay is sufficient to trigger a "speedy trial" analysis.

■  Turning to the second factor—the reason for the delay—the court is faced with the absence of any real explanation. At the hearing on the motion, the government argued that the pendency of the state charges, and the fact that Hay had been in state custody, were factors. But, that does not justify the delay, bearing in mind the tender in 1999 of Hay by the state authorities to AUSA Schattman for prosecution in this case. AUSA Schattman was a party to a specific agreement in 1999 that contemplated that Hay would be brought back to Fort Worth for prosecu-

tion in the instant case.[1] So, in the final analysis, there has been no meaningful explanation by the government for the delay. Absent such an explanation,[2] the court has no choice but to conclude that either the delay was intentional on the part of the prosecution, thus suggesting bad-faith, or it was the result of gross negligence on the part of the prosecutor. In either event, the length of the delay itself, absent an explanation, would seem to establish a Sixth Amendment violation. When the other factors are considered, the existence of a Sixth Amendment violation is indisputably established by the evidence in this case.

The "diligence in asserting his Sixth Amendment right" weighs in favor of Hay. His attorney in Cooke County reached a specific agreement with the federal prosecutor in 1999 that Hay would be brought to Fort Worth so that the prosecution of Hay in this case could go forward at that time. Hay was brought to Fort Worth for that purpose, but, for a reason or reasons the government has chosen not to disclose, his expectation was disappointed. Then,

while he was being held in Fort Worth pursuant to the federal detainer, he attempted to contact the office of the United States Attorney relative to disposition of the charges against him; and, he sent a letter to the prosecutor, but received no reply. The prosecutor received a clear message from Hay, first acting through his attorney in 1999, and then on his own, that Hay was anxious for there to be a disposition of the charges against him in this case.

■ Finally, even if the presumption of prejudice arising from the length of delay caused by, at least, the government's negligence did not carry the day for Hay as to the fourth factor (prejudice to the defendant resulting from the delay), the record establishes without dispute that Hay did suffer significant prejudice beyond the prejudice that is presumed to result from an unexcused lengthy delay. He was unnecessarily held in custody pursuant to the federal detainer for over one year in 2000 and 2001 because of the federal prosecutor's neglect of this case. Interests of defendants that the Sixth Amendment's

---

1. Interestingly, the federal Speedy Trial Act, 18 U.S.C. §§ 3161–74, does not allow the circumstance that a defendant in another authority's custody to toll the running of the "speedy trial" time. 18 U.S.C. §§ 3161(h)(1) & (j)(1)(A) & (4).

2. AUSA Worley did offer on behalf of AUSA Schattman the incredible explanation that "as far as Mr. Schattman knew [Hay] just didn't show up" after the District Attorney in Cooke County had told Mr. Schattman in late 1999 that Hay was being sent back to Fort Worth so that he could dispose of the charges against him in the instant case. 2/15/02 Tr. (rough draft) at 43. The following exchange occurred at the hearing:

> MR. WORLEY: And Mr. Schattman was aware of the situation—of the fact that he was in Cooke County and wanted to try to reach arrangements where he could plead guilty federally, but as far as Mr. Schattman knew he just didn't show up.

> THE COURT: Well, was Mr. Schattman aware that the Assistant District Attorney in Cooke County wanted the defendant to come back up here and take care of his federal business before he took care of his state business?

> MR. WORLEY: Yes, sir.

> THE COURT: And still no follow-up on that from your office.

> MR. WORLEY: I can say there was—I don't know of any follow-up.

*Id.* If the court were to accept this explanation as true, the Sixth Amendment violation would be even more evident. *See United States v. Deleon,* 710 F.2d 1218, 1221 (7th Cir.1983) (noting that "the Government under the Sixth Amendment, has a 'constitutional duty to make a diligent good-faith effort' to locate and apprehend a defendant and bring that defendant to trial," citing *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969)).

speedy trial right were designed to protect include the prevention of oppressive pretrial incarceration and the minimization of anxiety and concern of the accused. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. 2182. In *Barker*, the Supreme Court explained:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Id.* at 532–33, 92 S.Ct. 2182 (footnotes omitted).

Hay suffered oppressive pretrial incarceration, which was accompanied by his anxiety and concern as to the outcome of the federal charges—undoubtedly exacerbated by uncertainty as to whether he would be able to benefit from the agreement the prosecutor had made with his attorney and the Cooke County District Attorney in 1999. Those elements of prejudice are serious enough, but in this case they are accompanied by the added factors that the neglect by the federal prosecutor of this case has put Hay in a position that,

if the case were not dismissed, the delay in its prosecution could well cause him to be exposed to a longer period of incarceration than he would have faced had the government moved in a timely manner.

After weighing all the factors, the court has concluded that the government denied Hay his Sixth Amendment right to a speedy trial and that, for that reason, the indictment should be dismissed.

B. *The Rule 48(b) Ground.*

Rule 48(b) reads as follows:

> (b) BY COURT. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or *if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment,* information or complaint.

FED. R. CRIM. P. 48(b) (emphasis added). For the reasons given above, the court finds that there was unnecessary delay in bringing Hay to trial; and, the court, therefore, concludes that Rule 48(b) provides another legal basis for dismissal of the indictment.

\*     \*     \*     \*     \*     \*

If the government were to reindict Hay for any of the offenses that are being dismissed, notions of fair play would be offended. Therefore, the court is ordering the indictment dismissed with prejudice.

### III.

### *ORDER*

For the reasons given above,

The court ORDERS that the indictment filed in this case on October 13, 1999, and each of the three counts of such indict-

ment, be, and are hereby, dismissed with prejudice to reindictment.