IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-40344

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

J. GUADALUPE SAENZ

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:03-CR-498-10

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

J. Guadalupe Saenz ("Saenz") was convicted after a jury trial, under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, for conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. In this appeal, Saenz raises several constitutional, statutory, and procedural challenges to the proceedings below. Finding his challenges without merit, we affirm.

I.

On June 10, 2003, Saenz was indicted and a warrant was issued for his

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arrest. John Garza, of the Houston Police Department, and Special Agent John Schwartz, of the Drug Enforcement Administration in Houston, went by Saenz's address on several occasions to try to locate and arrest Saenz. In late July or early August of that year, however, a man who identified himself as associated with Saenz contacted Darby Hodges, a case agent, and told him that Saenz was in Mexico. Apprehension authority was then delegated to the United States Marshal Service. On January 2005, a United States Marshal followed up on a lead and drove by Saenz's house. That next month, he returned to the house, and was told by Saenz's daughter that Saenz was at work, but that she did not know where he worked. He left his phone number, and later received a call from Saenz's son who said Saenz was attending to a sick relative in Mexico. Deputy United States Marshals continued to surveil Saenz's house. Approximately two years after his indictment Saenz was arrested and detained pending trial.

Saenz filed pretrial motions soon after his June 13, 2005 initial appearance. He also filed a series of motions for continuances, all of which were granted by the district court, on the record and in writing, pursuant to relevant statutory justifications. Saenz's pretrial motions were pending until October 30, 2006, when the district court denied the motions and scheduled the final pretrial conference for November 6, 2006 and jury selection for November 7, 2006. Before the final pretrial conference Saenz filed a motion to dismiss his indictment for violating the Speedy Trial Act, 18 U.S.C. § 3161. On November 30, 2006, the district court denied this motion. On December 1, 2006, both sides appeared and announced themselves ready to proceed to trial. Jury selection occurred on January 22, 2007.

At trial, the government introduced a photospread, created on April 16, 2003 and used during pretrial identification procedures. The photospread

contained six photographs on a single sheet of paper. The officer who created the photospread created it in the same manner she had prepared many other photospreads. That is, after receiving Saenz's name, she looked up his driver's license photograph and determined that he was a male of Hispanic origin. She then selected five photographs of men resembling the photograph of Saenz from the driver's license photograph database. She then placed the six photographs on a single piece of paper, at random. In this case, Saenz's photograph was placed in the first, upper-left position on the photospread. At trial, four witnesses identified Saenz, and three of those four provided similar descriptions of him, that he had had a broken arm and a special type of car starter in his vehicle.

After jury trial, Saenz was convicted of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. Saenz was sentenced to a term of 240 months imprisonment, to be followed by ten years supervised release. The district court also imposed the mandatory special assessment of one hundred dollars.

## II.

We review the constitutional standards applied by the district court de novo. United States v. Shaw, 920 F.2d 1225, 1228 (5th Cir. 1991). Additionally, we review preserved constitutional challenges to a federal statute de novo. United States v. Bredimus, 352 F.3d 200, 203 (5th Cir. 2003) (citing United States v. Delgado-Nunez, 295 F.3d 494, 496 (5th Cir. 2002)).

District court rulings on the admissibility of evidence are generally reviewed for abuse of discretion. United States v. Rogers, 126 F.3d 655, 657 (5th Cir. 1997). When reviewing a district court ruling from a pretrial suppression

hearing, this Court "give[s] credence to the credibility choices and findings of fact of the district court unless clearly erroneous." United States v. Shaw, 894 F.2d 689, 691 (5th Cir. 1990) (quoting United States v. Raymer, 876 F.2d 383, 386 (5th Cir. 1989)) (internal quotation marks omitted).

We review a district court's findings of fact regarding Sixth Amendment claims of post-indictment delay for clear error and its legal conclusions de novo. United States v. Bergfeld, 280 F.3d 486, 488 (5th Cir. 2002) (citing Robinson v. Whitley, 2 F.3d 562, 568 (5th Cir. 1993)); United States v. Shaw, 920 F.2d 1225, 1228 (5th Cir. 1991) (citation omitted). We review the district court's factual findings under the Speedy Trial Act for clear error and its legal conclusions de novo. United States v. Bieganowski, 313 F.3d 264, 281 (5th Cir. 2002) (citation omitted).

## III.

Saenz argues, first, that the district court committed clear error when it denied his motion to dismiss his indictment due to an alleged violation of his Sixth Amendment right to a speedy trial. The Supreme Court has established four factors to analyze a Sixth Amendment speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's diligence in asserting his Sixth Amendment right; and (4) prejudice to the defendant resulting from the delay. Doggett v. United States, 505 U.S. 647, 651 (1992); see also Bergfeld, 280 F.3d at 488 (citation omitted). The threshold inquiry is whether the delay was long enough to trigger a "speedy trial" analysis. Bergfeld, 280 F.3d at 488 (citing Doggett, 505 U.S. at 651–52). A post-accusation delay of longer than one year is sufficient. Id. (citing Doggett, 505 U.S. at 652 n.1). Next, the length of the delay, the reason for the delay, and the defendant's diligence in asserting his

rights are all weighed against the prejudice to the defendant. Id. (citing Doggett, 505 U.S. at 656–57). If the first three factors weigh heavily in favor of the Defendant, prejudice may be presumed and the defendant need not show actual prejudice. Id.

Saenz argues that for two years after the indictment the government did virtually nothing to try to arrest him. The district court recognized that two years is a long enough delay to trigger an analysis of whether there is a Sixth Amendment speedy trial violation. With regards to the reason for the delay, the district court found that although the government did not devote as many resources as possible to apprehending him, some of the fault for this delay can be attributed to Saenz's actions. Considering that there was no record that Saenz asserted his right to a speedy trial, and Saenz presented no claim of actual prejudice, the district court rejected Saenz's motion. Saenz argues that there was presumptive prejudice and the government did not carry its burden of proving a lack of prejudice, and thus the district court erred as a matter of law. We disagree. To create a presumption of prejudice, the length of the delay, the reason for the delay, and the defendant's diligence in asserting his right must collectively weigh heavily in favor of the defendant. Upon our review of the record, we are satisfied that the district court gave appropriate weight to the three factors and did not err in finding they did not create a presumption of prejudice. We thus conclude the district court did not err in rejecting Saenz's Sixth Amendment speedy-trial claim.

Saenz next challenges the constitutionality of the federal statutes under which he was convicted and sentenced because his sentence was enhanced based on a determination by the court that he had a prior conviction. He complains that this finding, made by a judge rather than a jury and not alleged in the

indictment, violates Apprendi v. New Jersey, 530 U.S. 466 (2000). This argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 235, 247 (1998).

Saenz also argues the federal drug trafficking statute is facially unconstitutional under Apprendi. This argument is foreclosed by United States v. Slaughter, 238 F.3d 580, 581–82 (5th Cir. 2000), where this Court considered and rejected Saenz's argument.

Saenz argues, next, that in-court identification of him by several witnesses was the direct result of a tainted photospread. The Due Process Clause forbids the admission of unreliable identification testimony. Manson v. Brathwaite, 432 U.S. 98, 99, 114 (1977). Admissibility of identification evidence is determined by (1) whether the identification procedure was "unduly suggestive" and (2) whether the procedure posed "a very substantial likelihood of irreparable misidentification." Rogers, 126 F.3d at 658 (citation and internal quotation marks omitted). Photo arrays may be suggestive if the suspect is the only person closely resembling the description, or if the subjects of the photographs are "grossly dissimilar in appearance to the suspect." United States v. Wade, 388 U.S. 218, 233 (1967).

Saenz argues that the photospread was unduly suggestive because his picture was substantially different from the five others provided and because he was placed in the first, upper-left position. The district court determined that the photographs were placed in the photospread at random, were all taken from similar driver's license records, were viewed at the same time on one piece of paper, and appeared to be of very similar Hispanic males. As such, the district court concluded that there was insufficient evidence to conclude that the

photospread was unduly suggestive. Reviewing the district court's findings of fact for clear error, and the decision to admit evidence for abuse of discretion, we are satisfied the district court did not err when it denied Saenz's motion to suppress the identification.

Saenz argues, finally, that the district court erred in denying his motion to dismiss his indictment under the Speedy Trial Act. The Speedy Trial Act, "which is designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings, requires that a defendant's trial commence within seventy days from his indictment or initial appearance, whichever is later." United States v Stevens, 489 F.3d 647, 652 (5th Cir. 2007) (citing, inter alia, 18 U.S.C. § 3161(c)(1)). Certain delays are excluded in calculating the seventy day period, including delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F); see also Henderson v. United States, 476 U.S. 321, 329–30 (1986); United States v. Green, 508 F.3d 195, 200 (5th Cir. 2007). "If more than seventy non-excludable days pass between the indictment and the trial, the indictment shall be dismissed on motion of the defendant." United States v. Johnson, 29 F.3d 940, 942 (5th Cir. 1994) (internal quotation omitted).

Saenz argues his indictment should have been dismissed because his trial did not commence within seventy days of his initial appearance, on June 13, 2005. The district court concluded that there were only nineteen non-excludable days, well short of the seventy day limit. Reviewing the district court's findings of fact for clear error and its applications of law de novo, we are satisfied that the

district court did not err.  The pretrial motions, filed by Saenz and granted pursuant to statutory justifications, served to toll the clock.  The district court, thus, correctly denied Saenz's motion to dismiss his indictment under the Speedy Trial Act.

## IV.

For the foregoing reasons, Saenz's conviction is AFFIRMED.